**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **CYNTHIA JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civ. No. _____ |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CINERGY HEALTH, INC. (d/b/a** | ) | |
| **CINERGY HEALTH & LIFE and/or** | ) | |
| **a/k/a CINERGY HEALTH & LIFE** | ) | |
| **INSURANCE AGENCY),** | ) | |
| **THE NATIONAL CONGRESS OF** | ) | |
| **EMPLOYERS, INC., & COMPANION** | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, Cynthia Johnson, individually and on behalf of all others similarly situated, and files this Class Action Complaint against Defendants Cinergy Health, Inc. (d/b/a Cinergy Health & Life and/or Cinergy Health & Life Insurance Agency) ("Cinergy"), The National Congress of Employers, Inc. ("NCE"), and Companion Life Insurance Company ("Companion Life"). In support thereof, the Plaintiff alleges the following upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon the investigation made by and through her attorneys:

## NATURE OF THE CASE

1.      This is a class action brought pursuant to FED. R. CIV. P. 23 on behalf of a Class and Subclass of individuals who purchased term life insurance certificates from Cinergy that were underwritten by Companion Life and issued by or through NCE and/or Companion Life (referred to herein as the "Certificates").

1

2.      Members of the Class and Subclass (collectively, "Classes") were harmed by their purchase of the Certificates because they unknowingly became victims of a scheme by the Defendants to collectively profit from the deceptive sale, marketing, and unfair administration of the Certificates, as well as the deceptive sale of memberships in NCE.  Plaintiff and putative Class members were harmed by the Defendants' deceptive practices that included diverting premium dollars to pay membership fees to Defendant NCE and exorbitant commissions to Cinergy. Plaintiff and putative Class members' membership in NCE was at worst a sham, and at best an association with an organization that wholly failed to live up to its obligations.  Plaintiff and members of the putative Subclass also suffered damages when their Certificates were terminated without justification and in breach of the Certificate's terms.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to the personal jurisdiction of this Court and a substantial portion of the conduct of the Defendants which forms the basis of this action occurred in Sunrise, Florida where Defendant Cinergy Health, Inc. is domiciled and where a substantial portion of the wrongful conduct described herein occurred.

## PARTIES

5.      Plaintiff, Cynthia Johnson, is a citizen and current resident of Wellsville, Pennsylvania.

2

6.      Defendant Cinergy Health, Inc. (d/b/a "Cinergy Health & Life" and/or a/k/a "Cinergy Health & Life Insurance Agency") ("Cinergy") is a Florida incorporated company with its principal place of business in Sunrise, Florida.  It can be served to the attention of its officer, Daniel Touizer, at 10251 W. Oakland Park Blvd., Sunrise, Florida 33351.

7.      Defendant The National Congress of Employers, Inc. ("NCE") is a Delaware incorporated company registered to do business in the State of Florida.  It may be served via its registered agent, C T Corporation System, at 1200 South Pine Island Road, Plantation, FL 33324.

8.      Defendant Companion Life Insurance Company ("Companion Life") is a South Carolina incorporated insurance company and does business in the State of Florida.  It may be served at via its registered agent, Chief Financial Officer, at 200 E Gaines St., Tallahassee, FL 32399-0000.

## GENERAL ALLEGATIONS

9.      Plaintiff purchased a Term Life Insurance Certificate from Cinergy that was underwritten by Companion Life and issued by or through NCE and/or Companion Life (referred to herein as the "Certificate" and attached hereto as Exhibit A).

10.     The life insurance purchased by the Plaintiff is known as association group life insurance. When legitimately sold, it is offered by true groups or associations to their members who belong to the organization primarily for some reason other than to buy insurance.

11.     NCE is a sham organization that exists for the primary purpose of being the "'front" organization and vehicle through which Companion Life and Cinergy sold association group insurance. NCE was a "front" in that it allowed Companion Life and Cinergy to sell the association group term life certificates throughout the country below the radar of regulatory scrutiny by virtue of the fact many states do not require sellers or "producers" of association group insurance to be

3

licensed agents (but only if the product being sold is "true" group insurance). To be true group insurance, the association to whom the master policy was issued could not operate for the primary purpose of selling or having the insurance. NCE existed primarily, if not exclusively, for the purpose of selling and having insurance. Without regulatory scrutiny of the unlicensed individuals Cinergy employed to sell the product, and without maintaining an insurance license itself, Cinergy routinely disregarded insurance regulations that prohibited the use of false and misleading sales tactics, and unfair conduct in the administration of the policies or certificates being sold.

12.     At all relevant times Cinergy was operated and controlled by a fraudster named Daniel Touizer. In 2018, he pled guilty to mail and wire fraud and was sentenced to prison in Florida. The mail and wire fraud for which he was convicted were carried out to defraud investors in Touizer's companies from 2010 to 2017—approximately the same time frame as the Plaintiff's dealings with Cinergy. None of Touizer's illicit activities were disclosed to the Plaintiff.

13.     Touizer's criminal conviction revealed that Touizer was operating Cinergy for the primary purpose of collecting commissions as ill-gotten gains from the deceptive and fraudulent sales of insurance and then using the ill-gotten gains to finance his mail and wire fraud scheme that bilked tens of millions of dollars from investors.

14.     In the Plaintiff's case, as well as for the other members of the Classes, Touizer directed the sale of Term Life Insurance Certificates through false and deceptive means, including false advertising and deceptive communications that were sent to prospective purchasers of the Certificates. Among those communications, the Life Insurance Plan Member Handbook (the "Handbook") (attached hereto as Exhibit B) accompanied the Certificate and was issued by Cinergy to the Plaintiff. It was a uniform and standardized document that provided information on Cinergy and the coverage provided by the Certificate.

15.     In the Handbook, Cinergy represents itself as "a nationally licensed insurance agency with a range of insurance solutions" that "specialize[s] in helping people meet unique health and life insurance needs . . . ."  *See* Exhibit B.

16.     The Handbook also notes that Cinergy "[a]s a nationwide provider of innovative and affordable health and life insurance solutions . . . designed a variety of plans to meet the changing needs of American families." *Id.* According to the Handbook, Cinergy "offers assistance with insurance coverage that is affordable, easy to use and understand, and covers many different types of life situations." *Id.*

17.     Cinergy also promised in the Handbook to "continually strive to provide you with the best programs, services and value available in the insurance industry." *See id.*

18.      Enclosed with the Handbook was the "Certificate of Insurance from . . . Companion Life Insurance Company and the National Congress of Employers." *See* Exhibit A. The Handbook explained that "[t]his Policy is underwritten by Companion Life Insurance Company, Rated A-(Excellent) by A.M. Best as evidence of its fiscal strength." Exhibit B.

19.     The Life Insurance Plan Member Handbook notes that "[t]his group life insurance plan is available to all members of the National Congress of Employers."  *See id*.

20.     The Certificate itself does not specifically reference NCE. Nonetheless, the Certificate states that "[t]o become insured, eligible members must make application to Companion Life" and "Coverage will begin on the Premium Due Date, shown in the Group Application for benefits, following the date Companion Life approves the application . . . ." Exhibit A. The term "eligible member" is not defined. *See id.*

21.     The Certificate does define an "Active Member" to mean "a dues paying member in good standing with the Association." *See id.* "The Association" is not defined or identified by name in the Certificate, however. *See id.*

22.     The Handbook identifies the Plaintiff as an "Insured Member" whose "Cinergy Health & Life Member ID Number" was XXXXXX396; that the effective date of coverage for the Certificate was June 1, 2011 and provided a "Basic Term Life Benefit" of $50,000.  *See* Exhibit B.[1]

23.      Notably, Cinergy promised with delivery of the Certificate that "[y]our group life insurance coverage is guaranteed to remain in force for as long as you pay your monthly premium (unless the Policy between NCE and Companion Life Insurance Company is terminated, in which case you may purchase an individual policy directly from Companion Life, if eligible)." *See* Exhibit B.

24.     Neither the Handbook nor any other documentation provided to Plaintiff and members of the Classes disclosed that Cinergy was being operated by a fraudster in connection with an investment fraud scheme. Moreover, Companion Life and NCE knew of Cinergy and Touizer's fraudulent activities and did not disclose the information to the Plaintiff and members of the Classes.

25.     Companion Life and NCE authorized and approved the Handbook that was delivered with the Certificate to Plaintiff and Class members. Likewise, Companion Life and NCE authorized Cinergy (and in particular Touizer) to market and sell the Term Life Insurance Certificates and NCE memberships in the manner they were sold. Both Companion Life and NCE

---

[1] Plaintiff's name is incorrectly spelled by Cinergy in the Handbook as "Cinthia L Johnson."  *See* Exhibit B.

knew or should have known how and why Cinergy was marketing and selling the Certificates and memberships and paid Cinergy to do so. Both Companion Life and NCE ratified Cinergy's conduct by accepting payments from the Plaintiff and Class members that were induced by Cinergy's sales tactics. Likewise, Companion Life and NCE condoned and ratified Cinergy's and Touizer's conduct by paying commissions and other compensation to them. Companion Life and NCE are liable for the acts and omissions of Cinergy and Cinergy's employees and agents.

26.     Plaintiff never received any documentation or other materials from or about NCE associating her with NCE, other than the Handbook issued by Cinergy. No contact information for NCE was provided, nor was any explanation or description of membership benefits given beyond the availability of purchasing the Certificate as referenced in the Handbook.

27.     So, the information provided to the Plaintiff and members of the Classes revealed only that the Certificate was "from" Companion Life and NCE; that the insurance purchased by the Plaintiff was "available to all members of the NCE;" that Plaintiff was an "Insured Member;" and that the group life insurance coverage evidence by the Certificate was guaranteed to remain in force for as long as the Plaintiff and Class members paid their monthly premiums (unless the Policy between NCE and Companion Life Insurance Company was terminated).

28.     Upon information and belief, NCE was the insured under a master group policy that was underwritten by Companion Life. Certificates of insurance like the one issued to the Plaintiff and putative Class members were issued from the Master Policy after Companion Life approved the individual's applications. The applications and purchase of the Certificates were solicited by Cinergy who held itself out as an agency who designed and provided insurance to meet the needs of its customers. Thus, Cinergy operated as a dual agent. On the one hand, it was the authorized agent for Companion Life and NCE for the purpose of marketing and selling Certificates and

memberships. On the other hand, Cinergy was the agent of the Plaintiff and Class members for the purpose of procuring and then maintaining the association group insurance coverage and NCE memberships.

29.     In this case, Cinergy worked with Companion Life to design and provide the life insurance purchased by the Plaintiff and members of the Classes. Inherent to the design was the necessary inclusion of the membership association, NCE. In other words, the only way the association group life insurance certificates could be sold was by having the certificates issued from a master policy held by an association who made the coverage available only to its members.

30.     According to its website, the NCE has more than 150,000 members and is "one of the largest and fastest-growing organization[s] representing the the [sic] nation's 56.7 million independent workers across the country," (NCE, http://nceassociation.org/), and "is an advocacy group striving to improve our members lives by fighting for reform on key issues affecting our members, providing information to navigate the complex worlds of insurance, business, tax and retirement planning and providing benefits and services in these areas," Join Today, NCE, http://nceassociation.org/join-today/.

31.     The purpose for which NCE was formed is set out in its Articles of Incorporation:

The mission of the Association is to advocate on behalf of members, individually and collectively at the state and federal level and be a key business resource for small, independent business in America. To render public services as non-partisan, non-profit, organization. To develop acquaintance and fellowship, undertake projects, and act on matters of common interest and welfare to the members of the association . . . .

32.     Contrary to its website representations and its articles filed with the State of Delaware, NCE existed solely for the purpose of selling group insurance through Cinergy and possibly other sales agencies. It was solely by virtue of this arrangement that Companion Life and Cinergy could sell the Term Life Insurance Certificates through unlicensed agents.

33.     If NCE had an existence beyond serving as the front for Cinergy and Companion Life's association group insurance scam, it failed to operate consistent with its stated purpose and to meet its obligations owed to its members as set out in its Articles of Incorporation and other corporate documents. Specifically, NCE failed to operate for the common interest and welfare of its members. Instead, NCE put the interests of Cinergy, Touizer, Companion Life and individuals who managed and operated NCE above those of its members.

34.     According to its website, membership in the NCE costs $4 per month or $48 per year. *See* Join Today, NCE, http://nceassociation.org/join-today/. Despite what is on its website, there was no disclosure of the amount of membership fee paid to NCE through the Plaintiff's purchase of the Certificate, only that she was an "Insured Member" whose application for coverage had been approved by Companion Life.

35.     Plaintiff never received statement notices or other regular correspondence from Cinergy, NCE, or Companion Life regarding her Certificate or the purported membership in NCE.

36.     Plaintiff regularly made her premium payments.

37.     Despite the fact Plaintiff had continued to pay her premiums, Plaintiff was notified that coverage under her Certificate would end. Based on what she was told, Plaintiff understood that the coverage was being transferred to another company. However, Plaintiff's Certificate was never transferred to another company. Whether the coverage was to be transferred or whether the Policy between Companion Life and NCE was terminated for another reason, Plaintiff was not given notice of the termination of the Policy nor was she given the option to purchase an individual policy from Companion Life at comparable rates and coverage.

38.     Termination of Plaintiff's coverage was done contrary to the representations made in the Handbook provided by Cinergy where it explains that the coverage is guaranteed to remain

in force so long as the premiums are paid: "Your group life insurance coverage is guaranteed to remain in force for as long as you pay your monthly premium (unless the Policy between NCE and Companion Life Insurance Company is terminated, in which case you may purchase an individual policy directly from Companion Life, if eligible)." *See* Exhibit B.

39.     The Certificate provides that the insurance coverage will only end in the following circumstances:

The insurance will end with respect to an Insured, on the earliest of the following:

1.      When the Policy is cancelled;

2.      When the insurance is cancelled for the class of insureds to which the Insured belongs;

3.      The beginning of the period for which premium is not paid as to the Insured;

4.      The date the Insured is no longer an Active dues paying Member in any class or classes insured under the Policy unless (and only with respect to the Basic Term Life Insurance Benefit, if provided by the Policy) the Continuation of Basic Term Life Insurance Benefit During Total Disability applies.

*See* Exhibit A.

40.     Plaintiff was given no explanation for the cancellation of her coverage. She received no notice that the Policy was cancelled, that any premium had not been paid, or that she was no longer eligible for the coverage. Plaintiff was also not given the option to continue her coverage under a comparable insurance policy.

41.     Plaintiff timely paid her premiums and never missed the amounts owed under the Certificate.  Thus, Plaintiff is not at fault for the cancellation of her Certificate.

42.     Either Cinergy and/or NCE failed to maintain the Master Policy for the benefit of NCE members, or Companion Life cancelled the coverage provided by the Term Life Insurance Certificates for no justifiable reason.

## CLASS ALLEGATIONS

43.     Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of herself and as a representative of the following Class:

> All persons who own, or previously owned, a Certificate of Insurance purchased from Cinergy Health & Life that was underwritten by Companion Life Insurance Company and available only to individuals Cinergy characterized as members of The National Congress of Employers, Inc. (the "NCE Class").

44.     Plaintiff also seeks to represent the following Subclass:

> All persons who own, or previously owned, a Certificate of Insurance purchased from Cinergy Health & Life that was underwritten by Companion Life Insurance Company and available only to individuals Cinergy characterized as members of The National Congress of Employers, Inc. whose policy was terminated without notice or without being given the right to purchase comparable individual coverage ("Wrongful Termination Subclass").

45.     Excluded from the Classes are the Defendants, any entity in which the Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

46.     The Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

47.     The persons who fall within the Classes number in at least the hundreds and most likely thousands, and thus, the numerosity standard is satisfied.  Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable.  Class members may be informed of the pendency of this class action through direct mail.

48.     Plaintiff is an adequate representative of the Classes because she is a member of both the Class and Subclass and her interests do not conflict with the interests of those she seeks

to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

49.     Plaintiff's claims are typical of those of the NCE Class in that NCE Class members purchased life insurance Certificates from Defendant Cinergy underwritten by Defendant Companion Life, which required them to be members of Defendant NCE.  These Class members suffered harm when they did not receive the benefit of their bargain and when their Certificates were cancelled.

50.     Plaintiff's claims are typical of those of the Wrongful Termination Subclass because, like Plaintiff, these Class members' Certificates were terminated without notice and without the option to purchase an individual policy from Companion Life at comparable rates and coverage.

51.     There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members.  The questions of law and fact common to the Classes arising from Defendants' actions include, without limitation, the following:

a.   Whether Defendants engaged in a pattern of racketeering activity (mail and/or wire fraud);

b.   Whether the alleged RICO Enterprise is an "enterprise" within the meaning of 18 U.S.C. § 1961(4);

c.   Whether each of the Defendants conducted or participated in the affairs, directly or indirectly, of the RICO Enterprise;

d.   Whether the pattern of racketeering alleged caused the injury to property alleged;

e.   Whether Plaintiff and Class members are entitled to appropriate equitable remedies, including declaratory, injunctive relief and/or disgorgement;

f.   Whether Plaintiff and Class members are entitled to monetary damages, including treble damages, under RICO law;

g.   Whether Defendants Cinergy and Companion Life breached the Handbook and/or Certificate by failing to properly apply premium payments for the Term Life Insurance Certificates;

h.   Whether Defendant NCE breached its membership agreement with Plaintiff and putative Class members by failing to act in the interests of its membership, operating inconsistent with its stated purpose, and failing to apply its members' funds for their benefit;

i.   Whether the Defendants breached a contract with the Plaintiff and Class members by collecting payments or diverting funds for memberships in NCE without providing any benefits beyond issuance of the Term Life Insurance Certificates for membership in the NCE;

j.   Whether the Class members sustained damages as a result of Defendants' breaches of contract;

k.   Whether the Defendants NCE and/or Cinergy failed to properly maintain the Master Policy with Companion Life for the benefit of NCE members;

l.   Whether the Classes are entitled to damages, restitution, and/or other relief as a remedy for Defendants' breaches of contract or other wrongful conduct;

m.   Whether Defendants were unjustly enriched; and

n.   Whether Plaintiff and members of the putative Classes are entitled to the Class relief as requested herein.

52.   In addition to those set out above, common questions of fact and law also predominate for the Subclass, including, without limitation, the following:

a.   Whether Defendant Cinergy breached the Certificate, Handbook, or its implied contract by terminating the insurance;

b.   Whether Defendant Companion Life breached the Certificate or Handbook by terminating the insurance;

c.   Whether Defendants Cinergy and Companion Life breached the promises made in the Handbook by terminating the group life insurance coverage despite receipt of Plaintiff and putative Class members' monthly premiums;

d.   Whether Defendant NCE breached its membership agreement when it failed to maintain the Policy with Companion Life and failed to secure comparable replacement coverage for its members;

    e.   Whether Defendants wrongfully terminated the Master Policy from which the Term Life Insurance Certificates were issued; and

    f.   Whether the Plaintiff and Class members' membership status in NCE was either wrongfully initiated, or wrongfully terminated.

53.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

54.    A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Classes.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

55.    Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

## FIRST CAUSE OF ACTION
**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))**

56.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

57.     Defendants' conduct as set out herein constitutes a violation of 18 U.S.C. § 1962(c). Defendants have acted together, along with individuals and entities whose identities are currently unknown to Plaintiff and putative Class members, to conduct an enterprise through a pattern of racketeering activity.  As discussed in detail herein, Defendants have intentionally participated in at least one of two schemes to defraud Plaintiff and putative Class members of their life insurance Certificates, as well as the money that they paid to maintain their Certificates, by means of material misrepresentations, omissions, and half-truths.  There is a threat of long-term racketeering activity given the extensive scope of Defendants' activities and the significant monetary gains such activities have garnered them.  Defendants used the United States Mail and the internet in furtherance of their fraudulent scheme.

58.     Plaintiff, each member of the Class, and Defendants are "persons" as that term is defined throughout RICO (*i.e.*, 18 U.S.C. §§ 1961(3) and 1962(c)).

**The Alleged Associated-in-Fact RICO Enterprise**

59.     Defendants Cinergy (including its principal Touizer), NCE, and Companion Life associated-in-fact as "enterprise[s]" within the meaning of 18 U.S.C. § 1961(4) to market and sell life insurance certificates to Plaintiff and the NCE Class members while concealing material facts related to the membership in NCE, cancelling Plaintiff and the Wrongful Termination Subclass members' Certificates without offering comparable insurance, and fraudulently suppressing the fact Touizer was operating Cinergy for the primary purpose of collecting commissions as ill-gotten gains from the deceptive and fraudulent sales of insurance and then using the ill-gotten gains to finance his mail and wire fraud scheme that bilked tens of millions of dollars from investors.  The association-in-fact is referred to for purposes of this claim as the "RICO Enterprise."

60.     Upon information and belief, the "RICO Enterprise" was largely managed and controlled in Florida where Cinergy and Touizer are located.

61.     As set forth herein, the RICO Enterprise has an ascertainable structure that is separate and distinct from the persons and entities that constitute it, and the RICO Enterprise is separate and apart from the pattern of racketeering activity alleged herein.

**Purpose**

62.     The RICO Enterprise is an ongoing and continuing organization of companies associated for the common or shared purpose of continuing to profit from the life insurance Certificates sold to Plaintiff and the Classes, which were deceptive and designed to induce Plaintiff and Class members to purchase the life insurance Certificates and pay premiums and/or membership payments to their detriment.

**Relationships among Separate and Distinct Associates**

63.     Each associate of the RICO Enterprise is a separate and distinct legal entity that is free to act independently to advance their own interests, and which make their own day-to-day business decisions.  To the extent that any Defendant may be a related entity of another member of the same Enterprise (i.e. a subsidiary, parent, or sister corporation), the decision to operate as separate entities facilitated the wrongful conduct in question.

64.     The associates of the RICO Enterprise are distinct from the Enterprise itself.  Each member is not conducting solely its own affairs, but is conducting the affairs of the Enterprise aside and apart from its own affairs.  The members of each Enterprise have banded together to accomplish the fraudulent scheme and pattern of racketeering activity discussed herein, which could not have been accomplished by any member alone.

16

**Continuous Existence**

65.     The RICO Enterprise has had an ongoing and continuous existence since shortly before the issuance of the Certificate sufficient to permit Defendants to pursue the RICO Enterprise's purpose.  During this time, the RICO Enterprise has displayed a continuity of membership and Defendants acted continuously in their respective roles in the RICO Enterprise.

**Interstate Commerce**

66.     The RICO Enterprise engages in and affects interstate commerce because it involves activities across state boundaries, such as the fraudulent marketing, promotion, advertisement, sale, management, servicing, and administration of the life insurance Certificates described herein.

**Pattern of Racketeering Activity & Predicate Acts**

67.     This claim arises under 18 U.S.C. § 1962(c), which provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

68.     In violation of 18 U.S.C. § 1962(c), each Defendant has conducted or participated, directly or indirectly, in the conduct or the affairs of the RICO Enterprise through a pattern of racketeering activity involving the design, creation, sale, and marketing of the life insurance Certificates.  These acts constituted violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  Each racketeering act was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted Plaintiff and the putative Class members.  Therefore, Defendants have violated 18 U.S.C. § 1962(c).

69.     The multiple predicate acts of racketeering activity that Defendants committed and/or conspired to, or aided and abetted in the commission of, constitute a "pattern of racketeering

activity," as defined in 18 U.S.C. § 1961(5) as they were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

70. For the purpose of executing and/or attempting to execute the scheme to defraud or obtain money by means of false pretenses, representations, omissions, or promises through the sale, marketing, and administration of the life insurance Certificates, the RICO Enterprise, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service and/or commercial interstate carriers, including, but not limited to, handbooks, applications, contracts, correspondence, premium payments, membership payments, commission payments, and other materials relating to the marketing, sale, and administration of the life insurance Certificates.

71. For the purpose of executing and/or attempting to execute the scheme to defraud or obtain money by means of false pretenses, representations, omissions, or promises through the sale, marketing, and administration of the life insurance Certificates, the RICO Enterprise, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, which include, but are not limited to handbooks, applications, contracts, correspondence, premium payments, membership payments, commission payments, faxes, wire transfers, and other materials relating to the marketing, sale, and administration of the life insurance Certificates.  In addition, pursuant to and as part of the scheme to defraud, Defendants also received payments from Plaintiff and other Class members that were transmitted or cleared through the use of interstate wires in violation of 18 U.S.C. § 1343.  Defendants also wired to one another the fruits of their scheme to defraud.

**Injuries**

72.    But for the conduct of Defendants alleged in this Complaint, Plaintiff and the putative Classes would not have been injured. Plaintiff and the putative Classes' injury was a foreseeable and natural consequence of the RICO Enterprise's scheme to market, sell, and administer the life insurance Certificates.

73.    The injuries of Plaintiff and the putative Classes were directly and proximately caused by Defendants' racketeering activity that defrauded Plaintiff and the putative Classes, and which allowed Defendants to profit from the premature cancellation of Plaintiff and putative Wrongful Termination Subclass members' Certificates as well as from all putative Class members' worthless membership in NCE.

74.    Many of the precise dates for the RICO Enterprise's fraudulent uses of the U.S. Mail and wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records.  Indeed, the success of the RICO Enterprise's scheme depends upon concealment, and Defendants have withheld details of their schemes from Plaintiff and putative Class members.

75.    Even so, Plaintiff can describe the occasions on which the predicate acts of mail and wire fraud would have occurred, and how the interstate mail and wires were in furtherance of a scheme.  These include communications to perpetuate and maintain the scheme, including, among other things:

       a.    transmitting and receiving promotional materials touting the benefits of a life insurance plan with Cinergy Health & Life;

       b.    operating a call center to solicit sales of the Certificates and memberships;

       c.    sharing information about insureds and prospective purchasers of the life insurance Certificates;

    d.   processing applications for the life insurance Certificates;

    e.   processing premium payments and/or membership payments or dues received from the insureds, including those of Plaintiff and putative Class members;

    f.   transferring funds between Companion Life, NCE and Cinergy as commissions, membership dues, kick-backs, and other incentive payments, and

    g.   responding to consumer inquiries, concerns, and/or complaints regarding the Certificates.

76.    Defendants' corporate headquarters have communicated by interstate mail and wire (including email and facsimile) with each other and with various regional offices, subsidiaries, and affiliates in furtherance of their scheme.

77.    As a result, and by reason of the foregoing, Plaintiff and putative Class members have been injured, suffered harm, and sustained damage to their property, and are therefore entitled to recover actual and treble damages, and their costs of suit, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c).

78.    In addition, as set forth above, Defendants have violated 18 U.S.C. §§ 1962(c), and will continue to do so in the future.  Enjoining Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate pursuant to 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962.

## SECOND CAUSE OF ACTION
### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))

79.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein, including specifically those paragraphs set out above in the First Cause of Action.

80.     18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section."  In violation of 18 U.S.C. § 1962(d), each Defendant conspired or agreed to join a scheme to defraud Plaintiff and members of the proposed Classes.

81.     In violation of 18 U.S.C. § 1962(d), Defendants of the RICO Enterprise, described and discussed above in ¶¶ 56–78, *supra*, conspired to join a scheme to defraud Plaintiff and members of the proposed Classes by marketing, selling, and/or administering a life insurance Certificate to Plaintiff and putative Class members that was deceptively tied to a membership with Defendant NCE without receiving any benefits of membership and for which Plaintiff and putative members of the Wrongful Termination Subclass suffered a premature cancellation of their Certificates.  Defendants of the RICO Enterprise reaped substantial monetary gains from their conspiracy.  Defendants agreed to conduct or to participate in the affairs of the RICO Enterprise and agreed to commit at least two of the predicate acts identified above in the First Cause of Action.

82.     The injuries of Plaintiff and the putative Classes were directly and proximately caused by Defendants' racketeering activity that defrauded Plaintiff and the putative Classes. Defendants' racketeering activity at the expense of Plaintiff and NCE Class members allowed Defendants to profit from the sham membership in NCE.  Likewise, Defendants' racketeering activity allowed them to profit from the premature cancellation of Plaintiff and putative Wrongful Termination Subclass members' Certificates.

83.     As a result, and by reason of the foregoing, Plaintiff and putative Class members have been injured, suffered harm and sustained damage to their property, and are therefore entitled to recover actual and treble damages, and their costs of suit, including reasonable attorney fees, pursuant to 18 U.S.C. § 1964(c).

84.     In addition, as set forth above, Defendants have violated 18 U.S.C. §§ 1962(c) and (d), and will continue to do so in the future.  Enjoining Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate pursuant to 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962.

## THIRD CAUSE OF ACTION
### (Breach of Contract – Against Defendant Cinergy)

85.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

86.     Plaintiff and the putative Class members purchased uniform Term Life Insurance Certificates from Defendant Cinergy that were underwritten by Defendant Companion Life and issued from a Master Policy held by NCE.

87.     The Life Insurance Plan Member Handbook issued with each of the Certificates constitutes a valid and enforceable contract between Plaintiff and Defendant Cinergy, and between each putative member of the Classes set forth above and Defendant Cinergy.  *See* Exhibits A–B.

88.     Cinergy also acted as an agent of Plaintiff and putative Class members for the purpose of procuring and maintaining the association group insurance coverage and NCE memberships.  Cinergy's uniform agreement to act as the agent for Plaintiff and putative Class members for purposes of procuring and maintaining the insurance coverage and NCE memberships created an express or implied contract.

89.     Plaintiff and the putative Class members substantially performed their obligations under the terms of the Handbook, Certificate, and implied contract with Cinergy, including by timely paying premiums to maintain their life insurance coverage.

90.     Defendant Cinergy breached the Handbook, Certificate, and implied contract in several ways. Defendant Cinergy breached the terms of the Handbook and/or Certificate by

collecting payments designated as premium payments and using some portion of those payments to cover costs unrelated to the actual insurance evidenced by the Certificates—specifically, cost of membership in NCE and/or grossly inflated commissions to Cinergy for the membership in NCE (which Cinergy's President, Touizer, used to fund his own personal and illegal endeavors). Defendant Cinergy breached the terms of the implied contract by failing to maintain insurance that met the needs of Plaintiff and putative Class members.

91.     With respect to the Wrongful Termination Subclass, Defendant Cinergy breached the guarantee provided by the Handbook by failing to notify Plaintiff and putative Wrongful Termination Subclass members of the events that led to termination of their coverage. Likewise, Defendant Cinergy breached the guarantee provided by the Handbook by failing to provide Plaintiff and putative Wrongful Termination Subclass members with the means necessary to obtain comparable replacement coverage upon termination of the Certificates.  Defendant Cinergy also breached its implied contract to maintain the insurance coverage and NCE memberships for Plaintiff and putative members of the Wrongful Termination Subclass.

92.     Defendant Cinergy's breaches damaged Plaintiff and putative NCE Class members because Plaintiff and putative NCE Class members were caused to pay inflated premiums to fund Cinergy's excessive commissions and membership in the NCE without receiving commensurate benefits from Cinergy or from membership in the NCE.

93.     Defendant Cinergy's breaches damaged Plaintiff and putative Wrongful Termination Subclass members because Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage, which they did not receive any benefits from as it was prematurely terminated.

94.     Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

## FOURTH CAUSE OF ACTION
### (Breach of Contract – Against Defendant Companion Life)

95.     Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

96.     Plaintiff and the putative Class members purchased a Term Life Insurance Certificate from Defendant Cinergy that was offered by Defendant Companion Life.

97.     The life insurance Certificate underwritten by Companion Life and corresponding Life Insurance Plan Member Handbook, which Companion Life authorized and approved to set out the terms of its insurance, constitute a valid and enforceable contract between Plaintiff and Defendant Companion Life, and between each putative member of the Classes set forth above and Defendant Companion Life.  *See* Exhibits A–B.

98.     Plaintiff and the putative Class members substantially performed their obligations under the terms of the Handbook and Certificate, including by timely paying premiums to maintain their life insurance coverage.

99.     Defendant Companion Life breached the Handbook and Certificate in several ways. Defendant Companion Life breached the terms of the Handbook and/or Certificate by accepting payments designated as premium payments and allowing a portion of those payments to cover costs unrelated to the actual insurance evidenced by the Certificates—specifically, cost of membership in NCE and/or grossly inflated commissions to Cinergy for the membership in NCE (which Cinergy's President, Touizer, used to fund his own personal and illegal endeavors).

100.    With respect to the Wrongful Termination Subclass, Defendant Companion Life breached the Certificate by terminating the insurance for a reason other than those identified in the

Certificate.  Defendant Companion Life also breached the guarantee provided by the Handbook by terminating the group life insurance coverage despite receipt of Plaintiff and putative Wrongful Termination Subclass members' monthly premiums.

101.    Defendant Companion Life's breaches damaged Plaintiff and putative NCE Class members because Plaintiff and putative NCE Class members were caused to pay inflated premiums, including for membership in the NCE without receiving commensurate benefits of membership in the NCE.

102.    Defendant Companion Life's breaches damaged Plaintiff and putative Wrongful Termination Subclass members because Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage, which they did not receive any benefits from as it was prematurely terminated.

103.    Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – Against Defendant NCE)**

104.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

105.    An express or implied contract existed between NCE and the Plaintiff and putative Class members by virtue of the Plaintiff's and putative Class members' membership in the NCE association.

106.    Plaintiff and the putative Class members substantially performed their obligations under the terms of the NCE membership, including by timely paying membership payments or dues to maintain their life insurance coverage and association membership.

107.    Defendant NCE breached its membership agreement with members of the NCE Class when it failed to act in the interests of its membership; failed to operate consistent with its stated purpose as set out in its Articles of Incorporation; and accepted membership dues and failed to apply those funds for the benefit of its members.

108.    Defendant NCE also breached its membership agreement with members of the Wrongful Termination Subclass when it failed to maintain the Policy with Companion Life and failed to secure comparable replacement coverage for its members.

109.    Defendant NCE's breaches damaged Plaintiff and putative NCE Class members because Plaintiff and putative NCE Class members made payments for membership in the NCE but did not receive commensurate benefits of membership in the NCE.

110.    Defendant NCE's breaches damaged Plaintiff and putative Wrongful Termination Subclass members because Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage, which they did not receive any benefits from as it was prematurely terminated.

111.    Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**

112.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

113.    To the extent necessary, Plaintiff brings this count for unjust enrichment in the alternative to Plaintiff's breach of contract counts.

114.    The Plaintiff and members of the putative Classes conferred benefits on Defendants Cinergy and Companion Life by providing premium payments on the Certificate and conferred

benefits on Defendant NCE by providing funds that were ultimately paid to NCE as membership dues and/or other payments for their purported membership in the NCE.

115.    Defendants appreciated or knew of the benefits conferred on them by Plaintiff and members of the putative Classes.

116.    Defendants retained the benefits under such circumstances as make the retention inequitable.  Specifically, Defendants used NCE as a vehicle for Companion Life and Cinergy to sell association group insurance and avoid regulatory scrutiny.  Through this scheme, all three Defendants profited monetarily, including, but not limited to, Companion Life receiving premium payments for the deceptive insurance; Cinergy receiving inflated commissions from the sale of the deceptive insurance (which its President is alleged to have used to fund other criminal acts); and NCE receiving membership payments from unwitting members who did not know that they were making such payments.

117.    Furthermore, Defendant NCE surreptitiously collected payments for Plaintiff and putative NCE Class members' continued membership in its organization without providing Plaintiff or putative NCE Class members any documentation confirming their membership with the organization, informing them that they were making payments to the organization, or providing them with benefits of membership consistent with the organization's stated purpose.

118.    Additionally, Defendants Cinergy, NCE and Companion Life cancelled Plaintiff and putative Wrongful Termination Subclass members' Certificates without any justification, without providing comparable replacement insurance, in violation of the terms of the Certificate, and in contravention to the representations made in the Handbook.

119.    It is inequitable for Defendants to retain the benefits of the premium payments, commissions, membership payments, and/or other monies received from Plaintiff and members of the NCE Class and Wrongful Termination Subclass.

120.    Plaintiff and members of the putative Classes demand an award against Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

a.  Certifying the NCE Class and Wrongful Termination Subclass as requested herein;

b.  Awarding Plaintiff and Class members compensatory damages, trebled, in an amount to be determined at trial;

c.  Ordering all appropriate equitable remedies, including but not limited to declaratory and injunctive relief;

d.  Awarding Plaintiff and Class members attorneys' fees and costs; and

e.  Affording Plaintiff and Class members with such further and other relief as deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: June 11, 2021                    Respectfully submitted,


                                        /s/   J. Matthew Stephens
                                        J. Matthew Stephens (Florida Bar No. 0688649)
                                        P. Michael Yancey (to file for admission *pro hac vice*)
                                        James M. Terrell (to file for admission *pro hac vice*)
                                        Courtney C. Gipson (to file for admission *pro hac vice*)
                                        **METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
                                        2201 Arlington Avenue South
                                        Birmingham, Alabama 35205
                                        Telephone: (205) 939-0199
                                        Facsimile: (205) 939-0399
                                        mstephens@mtattorneys.com
                                        myancey@mtattorneys.com
                                        jterrell@mtattorneys.com
                                        cgipson@mtattorneys.com

                                        *Attorneys for Plaintiff*



**DEFENDANTS TO BE SERVED BY PERSONAL PROCESS SERVER AT:**

**Cinergy Health & Life**
c/o Daniel Touizer or Cinergy's Officer or Agent
10251 W. Oakland Park Blvd.
Sunrise, Florida 33351

**The National Congress of Employers, Inc.**
c/o C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

**Companion Life Insurance Company**
c/o Chief Financial Officer
200 E Gaines St.
Tallahassee, FL 32399-0000