## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Case No. 21-61228-CIV – COHN/STRAUSS

| | |
|---|---|
| **CYNTHIA JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CINERGY HEALTH, INC. (d/b/a** | ) |
| **CINERGY HEALTH & LIFE and/or** | ) |
| **a/k/a CINERGY HEALTH & LIFE** | ) |
| **INSURANCE AGENCY), GROUP PLAN** | ) |
| **ADMINISTRATORS, INC., & THE HEALTH** | ) |
| **DEPOT ASSOCIATION, INC.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| *Jury Trial Demanded* | ) |

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW, Plaintiff, Cynthia Johnson, individually and on behalf of all others similarly situated, and files this First Amended Class Action Complaint against Defendants Cinergy Health, Inc. (d/b/a Cinergy Health & Life and/or Cinergy Health & Life Insurance Agency) ("Cinergy"), Group Plan Administrators, Inc ("Group Plan Administrators") and The Health Depot Association, Inc. ("Health Depot Association").[1]  In support thereof, the Plaintiff alleges the following upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon the investigation made by and through her attorneys:

---

[1] The National Congress of Employers, Inc. ("NCE") and Companion Life Insurance Company ("Companion"), who were former Defendants in this action, have stipulated to their dismissal. Plaintiff intends to file a Notice of Voluntary Dismissal pursuant to FED. R. CIV. P. 41 with this Amended Complaint.

## NATURE OF THE CASE

1.      This is a class action brought pursuant to FED. R. CIV. P. 23 on behalf of a Class of individuals who were enrolled as members of an association by Cinergy and/or Group Plan Administrators.  Cinergy and/or Group Plan Administrators received unearned, undisclosed and concealed kickbacks from payments made by the Class for membership dues and term life insurance certificates.

2.      Members of the Class were harmed because they unknowingly became victims of a scheme by the Defendants to collectively profit from unearned, undisclosed and concealed kickbacks taken from payments made by the Plaintiff and Class for association membership dues or that were otherwise designated as insurance premiums.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to the personal jurisdiction of this Court and a substantial portion of the conduct of the Defendants which forms the basis of this action occurred in Sunrise, Florida where Defendant Cinergy Health, Inc. was domiciled and where a substantial portion of the wrongful conduct described herein occurred.

## PARTIES

5.      Plaintiff, Cynthia Johnson, is a citizen and current resident of Wellsville, Pennsylvania.

6.      Defendant Cinergy Health, Inc. (d/b/a "Cinergy Health & Life" and/or a/k/a "Cinergy Health & Life Insurance Agency") ("Cinergy") is a Florida incorporated company that has been administratively dissolved. Its last known principal place of business was in Sunrise, Florida.

7.      Defendant Group Plan Administrators, Inc. ("Group Plan Administrators") is a New York incorporated company with its principal place of business in Old Brookville, New York. Group Plan Administrators has been authorized to do business, and has been doing business, continuously in Florida since 2008. Its president is Scott E. DiTrapani who has held a nonresident license to sell health insurance in Florida since 2008. Group Plan Administrators can be served through its registered agent: CT Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324.

8.      Defendant The Health Depot Association, Inc. ("Health Depot Association") is an Arizona incorporated company with its principal place of business in Phoenix, Arizona. Health Depot Association has been authorized to do business, and has been doing business, continuously in Florida since 2016. Health Depot Association can be served through its registered agent: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida, 32301.

## **GENERAL ALLEGATIONS**

9.      Cinergy worked for years to coordinate the sale of association memberships and both group life insurance and group health insurance to the members of the associations Cinergy affiliated with. The insurance purchased by the Plaintiff and Classes was association group life insurance.

10.      When legitimately sold, association group life insurance is offered by true associations to their members who belong to the organization primarily for some reason other than

3

to buy insurance. In other words, members pay dues to the association to maintain their membership and in return receive benefits of membership that are consistent with the purpose of the association, and any insurance that may be purchased through the association is secondary or ancillary to the other benefits of membership.

11.     In other cases (like this one) the associations are employed illegitimately and primarily for the purpose of selling insurance. Although the associations are given a façade to create the false impression they exist for a greater purpose than selling insurance, in reality, their primary purpose is to serve as a master policyholder for a group association policy from which individual certificates can be issued to "dues paying members." In the end, the members receive little or nothing of value for their membership dues.

12.     Plaintiff only recently learned through disclosures made in this case that Group Plan Administrators has been involved with Cinergy in its business of selling association memberships and group term life insurance certificates. Together the companies have aided and abetted one another in their scheme to collect unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class for membership dues and term life insurance certificates. Both companies served as the agent and co-conspirator of the other and both are liable for their own acts and the acts of the other.

13.     From an organizational chart perspective, a company in Cinergy's position is primarily the sales or distribution channel. It markets to and interfaces with customers who will ultimately become members of an association. As mentioned above, an association is necessarily involved and serves two roles, as a façade of a membership organization and as the policyholder to whom an insurance company will issue a master group policy from which individual insurance certificates can be issued to "members" of the association who purchase the insurance. In the

4

middle, between the sales force and the association, is a company in Group Plan Administrators' position who, as its name implies, coordinates issuance of the master policy to the association and then serves as the administrator of the policy and the association's membership. The administrator services the policy through collection and distribution of premiums and membership dues. For the purchase of the insurance, the administrator collects a lump sum amount monthly represented to be a premium for the life insurance and the monthly membership dues. However, undisclosed to the members is that a substantial portion of their monthly payment is being taken to pay unearned, undisclosed and concealed kickbacks to Cinergy and Group Plan Administrators, and possibly others. Specifically, a substantial portion of the money designated as membership dues was ultimately paid to Cinergy and/or Group Plan Administrators rather than to the association.

14.     Plaintiff originally purchased a Term Life Insurance Certificate from Cinergy that was underwritten by Companion Life and issued through an association known as The National Congress of Employers, Inc. ("NCE") and/or Companion Life.  The Plaintiff paid premiums and membership dues to maintain life insurance coverage, a substantial and undisclosed portion of which was paid to or retained by Cinergy and/or Group Plan Administrators rather than the association.

15.     In April 2015, Companion Life terminated the master policy held by NCE. In response, and upon information and belief, the former NCE members (who had also been Companion Life insureds) were rolled over into another membership with the Health Depot Association by Group Plan Administrators and Cinergy. Group Plan Administrators and Cinergy continued to collect payments from the members for life insurance premiums and membership dues. Again, a substantial and undisclosed portion of the amounts paid as membership dues was

ultimately paid to or retained by Cinergy and/or Group Plan Administrators rather than the association.

16.     At all relevant times Cinergy was operated and controlled by a fraudster named Daniel Touizer. In 2018, he pled guilty to mail and wire fraud and was sentenced to prison in Florida. The mail and wire fraud for which he was convicted were carried out to defraud investors in Touizer's companies from 2010 to 2017—approximately the same time frame as the Plaintiff's dealings with Cinergy and Group Plan Administrators. None of Touizer's illicit activities were disclosed to the Plaintiff.

17.     Touizer's criminal conviction revealed that Touizer was operating Cinergy for the primary purpose of collecting unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class for membership dues and term life insurance certificates and then using the ill-gotten gains to finance his mail and wire fraud scheme that bilked tens of millions of dollars from investors.

18.     In the Plaintiff's case, as well as for the other members of the Class, Touizer directed the sale of association memberships through false and deceptive means, including false advertising and deceptive communications that were sent to prospective purchasers of the Certificates. Among those communications, the Life Insurance Plan Member Handbook (the "Handbook") (attached hereto as Exhibit A) accompanied the original Companion Life Insurance Certificate and was issued by Cinergy to the Plaintiff. It was a uniform and standardized document that provided information on Cinergy and the coverage provided by the Certificate.

19.     In the Handbook, Cinergy represents itself as "a nationally licensed insurance agency with a range of insurance solutions" that "specialize[s] in helping people meet unique health and life insurance needs . . . ." *See id.*

6

20.     The Handbook also notes that Cinergy "[a]s a nationwide provider of innovative and affordable health and life insurance solutions . . . designed a variety of plans to meet the changing needs of American families." *Id.* According to the Handbook, Cinergy "offers assistance with insurance coverage that is affordable, easy to use and understand, and covers many different types of life situations." *Id.*

21.     Cinergy also promised in the Handbook to "continually strive to provide you with the best programs, services and value available in the insurance industry." *See id.*

22.     The Handbook identifies the Plaintiff as an "Insured Member" whose "Cinergy Health & Life Member ID Number" was XXXXXX396; that the effective date of coverage for the Certificate was June 1, 2011 and provided a "Basic Term Life Benefit" of $50,000.  *See id.*[2]

23.     Neither the Handbook nor any other documentation provided to Plaintiff and members of the Classes disclosed that Cinergy was being operated by a fraudster in connection with an investment fraud scheme. Moreover, Group Plan Administrators knew of Cinergy and Touizer's fraudulent activities and did not disclose the information to the Plaintiff and members of the Classes.

24.     When Companion Life terminated the policy with NCE in April 2015, Cinergy and Group Plan Administrators rolled over NCE members, including the Plaintiff and members of the Classes into memberships with the Health Depot Association and agreed to continue their association memberships and life insurance coverage on essentially the same terms as set out in the Handbook, with the exception that group term association life insurance coverage would be provided by another insurance company.

---

[2] Plaintiff's name is incorrectly spelled by Cinergy in the Handbook as "Cinthia L Johnson."  *See* Exhibit A.

25.     The Health Depot Association authorized Cinergy (and in particular Touizer) and Group Plan Administrators to enroll Plaintiff and members of the Classes as members of its association and to collect membership dues from them. Health Depot Association condoned and ratified Cinergy's, Touizer's and Group Plan Administrator's conduct by paying commissions and other compensation in the form of unearned, undisclosed and concealed kickbacks from payments to them.   The Health Depot Association is liable for the acts and omissions of Group Plan Administrators and Cinergy and its employees and agents.

26.     Plaintiff did not receive statement notices or other regular correspondence from Cinergy, Group Plan Administrators, Health Depot Association, or any other company related to the insurance or memberships.

27.     Although she did not receive statements, Plaintiff made contacts concerning her life insurance through the customer service department of Cinergy. Plaintiff had also authorized Cinergy and/or Group Plan Administrators to automatically withdraw payment for premiums and membership dues from her checking account and withdrawals were made from her account. It was only recently discovered that Group Plan Administrators collected some of the payments from her bank account and may have been who Plaintiff communicated with when she contacted the Cinergy customer service department.

28.     Despite the fact payments were collected from Plaintiff, Plaintiff was notified that her life insurance coverage would end in 2017. Based on what she was told, Plaintiff understood that the coverage was being transferred to another company. However, Plaintiff was not transferred to another company and Plaintiff was not given the option to purchase an individual policy at comparable rates and coverage.

29.     Plaintiff was given no explanation for the cancellation of her coverage. She received no notice that any premium or membership due had not been paid, or that she was no longer eligible for the coverage. Plaintiff was also not given the option to continue her coverage under a comparable insurance policy.

30.     Thus, Plaintiff is not at fault for the cancellation of her Certificate or her association membership.

31.     Cinergy and/or Group Plan Administrators and/or Health Depot Association failed to maintain the Master Policy for the benefit of members.

## CLASS ALLEGATIONS

32.     Plaintiff brings this case as a class action under FED. R. CIV. P. 23, on behalf of herself and as a representative of the following Classes:

> All persons who paid association membership dues to Cinergy or Group Plan Administrators and were members of an association, including but not limited to the Health Depot Association, that was a policyholder of a master policy from which term life insurance certificates were issued to its members. ("Association Dues Class").

33.     Plaintiff also seeks to represent the following Subclass:

> All persons who own, or previously owned, a Certificate of Insurance purchased from Cinergy or Group Plan Administrators that was available only to members of an association and whose policy was terminated without being given the right to convert the coverage to comparable individual coverage ("Wrongful Termination Subclass").

34.     Excluded from the Classes are the Defendants, any entity in which the Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

35.     The Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

36.     The persons who fall within the Classes number in at least the hundreds and most likely thousands, and thus, the numerosity standard is satisfied.  Because Class members are geographically dispersed across the nation, joinder of all Class members in a single action is impracticable.  Class members may be informed of the pendency of this class action through direct mail.

37.     Plaintiff is an adequate representative of the Classes because she is a member of both the Class and Subclass and her interests do not conflict with the interests of those she seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel, who have extensive experience prosecuting complex class litigation.

38.     Plaintiff's claims are typical of those of the Association Dues Class in that Class members purchased association memberships and life insurance Certificates from Defendant Cinergy and/or Group Plan Administrators, which required them to be members of an association. These Class members suffered harm when the Defendants collected unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class for membership dues and term life insurance certificates. Plaintiff and the Class did not receive the benefit of their bargain when their Certificates were cancelled.

39.     Plaintiff's claims are typical of those of the Wrongful Termination Subclass because, like Plaintiff, these Subclass members' Certificates were terminated without notice and without the option to purchase an individual policy at comparable rates and coverage.

40.     There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members.  The questions of law and fact common to the Classes arising from Defendants' actions include, without limitation, the following:

    a.  Whether the Defendants illegally collected unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class members for membership dues and term life insurance certificates;

    b.  Whether Defendants engaged in a pattern of racketeering activity (mail and/or wire fraud);

    c.  Whether the alleged RICO Enterprise is an "enterprise" within the meaning of 18 U.S.C. § 1961(4);

    d.  Whether every Defendant conducted or participated in the affairs, directly or indirectly, of the RICO Enterprise;

    e.  Whether the pattern of racketeering alleged caused the injury to property alleged;

    f.  Whether Plaintiff and Class members are entitled to appropriate equitable remedies, including declaratory, injunctive relief and/or disgorgement;

    g.  Whether Plaintiff and Class members are entitled to monetary damages, including treble damages, under RICO law;

    h.  Whether Defendants Cinergy and/or Group Plan Administrators breached the express promises made in the Handbook by failing to properly apply premium payments for membership dues or Term Life Insurance Certificates;

    i.  Whether Defendant Health Depot Association breached its membership agreement with Plaintiff and putative Class members by failing to act in the interests of its membership, operating inconsistent with its stated purpose, and failing to apply its members' funds for their benefit.

    j.  Whether the Defendants breached a contract with the Plaintiff and Class members by collecting payments or diverting funds for memberships in Health Depot Association without providing any benefits beyond issuance of the Term Life Insurance Certificates for membership in the association;

    k.  Whether the Class members sustained damages as a result of Defendants' breaches of contract;

l.   Whether the Defendants Cinergy and/or Group Plan Administrators and/or Health Depot Association failed to properly maintain a Master Policy for the benefit of Health Depot Association members;

m.   Whether the Classes are entitled to damages, restitution, and/or other relief as a remedy for Defendants' breaches of contract or other wrongful conduct;

n.   Whether Defendants were unjustly enriched; and

o.   Whether Plaintiff and members of the putative Classes are entitled to the Class relief as requested herein.

41.   In addition to those set out above, common questions of fact and law also predominate for the Subclass, including, without limitation, the following:

a.   Whether Defendant Cinergy breached the express promises set out in the Handbook, or its implied contract by terminating the insurance;

b.   Whether Defendants Cinergy and Group Plan Administrators breached the promises made in the Handbook by terminating the group life insurance coverage despite receipt of Plaintiff and putative Class members' monthly premiums;

c.   Whether Defendant Health Depot Association breached its membership agreement when it failed to maintain a master policy and failed to secure comparable replacement coverage for its members;

d.   Whether Defendants wrongfully terminated the Master Policy from which the Term Life Insurance Certificates were issued; and

e.   Whether the Plaintiff and Class members' membership status in Health Depot Association was either wrongfully initiated, or wrongfully terminated.

42.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

43.   A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the

Classes.  The presentation of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

44.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

## FIRST CAUSE OF ACTION
### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))

45.     Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

46.     Defendants' conduct as set out herein constitutes a violation of 18 U.S.C. § 1962(c). Defendants have acted together, along with individuals and entities whose identities are currently unknown to Plaintiff and putative Class members, to conduct an enterprise through a pattern of racketeering activity.  As discussed in detail herein, Defendants have intentionally participated in a scheme to defraud Plaintiff and putative Class members of their money that they paid to maintain association memberships, by means of material misrepresentations, omissions, and half-truths. There is a threat of long-term racketeering activity given the extensive scope of Defendants' activities and the significant monetary gains such activities have garnered them.  Defendants used the United States Mail and the internet in furtherance of their fraudulent scheme.

47.     Plaintiff, each member of the Class, and Defendants are "persons" as that term is defined throughout RICO (*i.e.*, 18 U.S.C. §§ 1961(3) and 1962(c)).

**The Alleged Associated-in-Fact RICO Enterprise**

48.     Defendants Cinergy (including its principal Touizer), Group Plan Administrators associated-in-fact as "enterprise[s]" within the meaning of 18 U.S.C. § 1961(4) to market and sell association memberships to Plaintiff and the Association Dues Class members while concealing material facts related to the memberships dues,  and fraudulently suppressing the fact Touizer was operating Cinergy for the primary purpose of collecting unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class for membership dues and/or term life insurance certificates and then using the ill-gotten gains to finance his mail and wire fraud scheme that bilked tens of millions of dollars from investors.  The association-in-fact is referred to for purposes of this claim as the "RICO Enterprise."

49.     Upon information and belief, the "RICO Enterprise" was largely managed and controlled in Florida where Cinergy and Touizer are located. Cinergy and Touizer formed and maintained a relationship with Group Plan Administrators, as well as Health Depot Association and other associations to carry out the purpose of the enterprise.

50.     As set forth herein, the RICO Enterprise has an ascertainable structure that is separate and distinct from the persons and entities that constitute it, and the RICO Enterprise is separate and apart from the pattern of racketeering activity alleged herein.

**Purpose**

51.     The RICO Enterprise is an ongoing and continuing organization of companies associated for the common or shared purpose of continuing to profit from the association memberships sold to Plaintiff and the Classes, which were deceptive and designed to induce

14

Plaintiff and Class members to purchase the life insurance Certificates and pay membership payments to their detriment and/or premiums to their detriment.

**Relationships among Separate and Distinct Associates**

52.     Each associate of the RICO Enterprise, including Cinergy, Touizer, Group Plan Administrators and the Health Depot Association,  is a separate and distinct legal entity that is free to act independently to advance their own interests, and which make their own day-to-day business decisions.  To the extent that any Defendant may be a related entity of another member of the same Enterprise (i.e. a subsidiary, parent, or sister corporation), the decision to operate as separate entities facilitated the wrongful conduct in question.

53.     The associates of the RICO Enterprise are distinct from the Enterprise itself.  Each member is not conducting solely its own affairs, but is conducting the affairs of the Enterprise aside and apart from its own affairs.  The members of each Enterprise have banded together to accomplish the fraudulent scheme and pattern of racketeering activity discussed herein, which could not have been accomplished by any member alone.

**Continuous Existence**

54.     The RICO Enterprise has had an ongoing and continuous existence since shortly before the issuance of the Certificate sufficient to permit Defendants to pursue the RICO Enterprise's purpose.  During this time, the RICO Enterprise has displayed a continuity of membership and Defendants acted continuously in their respective roles in the RICO Enterprise.

**Interstate Commerce**

55.     The RICO Enterprise engages in and affects interstate commerce because it involves activities across state boundaries, such as the fraudulent marketing, promotion,

advertisement, sale, management, servicing, and administration of the life insurance Certificates described herein.

**Pattern of Racketeering Activity & Predicate Acts**

56.    This claim arises under 18 U.S.C. § 1962(c), which provides in relevant part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

57.    In violation of 18 U.S.C. § 1962(c), each Defendant has conducted or participated, directly or indirectly, in the conduct or the affairs of the RICO Enterprise through a pattern of racketeering activity involving the design, creation, sale, and marketing of the association memberships and the payment and/or receipt of unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class.  These acts constituted violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  Each racketeering act was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results, and impacted Plaintiff and the putative Class members.  Therefore, Defendants have violated 18 U.S.C. § 1962(c).

58.    The multiple predicate acts of racketeering activity that Defendants committed and/or conspired to, or aided and abetted in the commission of, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5) as they were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

59.    For the purpose of executing and/or attempting to execute the scheme to defraud or obtain money by means of false pretenses, representations, omissions, or promises through the sale, marketing, and administration of the life insurance Certificates, the RICO Enterprise, in

16

violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service and/or commercial interstate carriers, including, but not limited to, handbooks, applications, contracts, correspondence, premium payments, membership payments, commission payments, and other materials relating to the marketing, sale, and administration of the association memberships and life insurance Certificates.

60.     For the purpose of executing and/or attempting to execute the scheme to defraud or obtain money by means of false pretenses, representations, omissions, or promises through the sale, marketing, and administration of the association memberships and the collection of unearned, undisclosed and concealed kickbacks from payments made by the Plaintiff and Class , the RICO Enterprise, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, which include, but are not limited to handbooks, applications, contracts, correspondence, membership payments, commission payments, faxes, wire transfers, and other materials relating to the marketing, sale, and administration of the association memberships and/or life insurance Certificates.  In addition, pursuant to and as part of the scheme to defraud, Defendants also received payments from Plaintiff and other Class members that were transmitted or cleared through the use of interstate wires in violation of 18 U.S.C. § 1343.  Defendants also wired to one another the fruits of their scheme to defraud.

**Injuries**

61.     But for the conduct of Defendants alleged in this Complaint, Plaintiff and the putative Classes would not have been injured. Plaintiff and the putative Classes' injury was a

foreseeable and natural consequence of the RICO Enterprise's scheme to market, sell, and administer the association memberships and/or life insurance Certificates.

62.     The injuries of Plaintiff and the putative Classes were directly and proximately caused by Defendants' racketeering activity that defrauded Plaintiff and the putative Classes, and which allowed Defendants to profit from the premature cancellation of Plaintiff and putative Wrongful Termination Subclass members' Certificates as well as from all putative Class members' association memberships.

63.     Many of the precise dates for the RICO Enterprise's fraudulent uses of the U.S. Mail and wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records.  Indeed, the success of the RICO Enterprise's scheme depends upon concealment, and Defendants have withheld details of their schemes from Plaintiff and putative Class members.

64.     Even so, Plaintiff can describe the occasions on which the predicate acts of mail and wire fraud would have occurred, and how the interstate mail and wires were in furtherance of a scheme.  These include communications to perpetuate and maintain the scheme, including, among other things:

        a.  transmitting and receiving promotional materials touting the benefits of a life insurance plan with Cinergy;

        b.  operating a call center to solicit sales of the association memberships and Certificates;

        c.  sharing information about association members and prospective purchasers of the life insurance Certificates;

        d.  processing association membership enrollment applications for the life insurance Certificates;

e. processing premium payments and/or membership payments or dues received from the association members, including those of Plaintiff and putative Class members;

f. transferring funds between Cinergy, Touizer, Group Plan Administrators and Health Depot Association as commissions, membership dues, kickbacks, and other incentive payments, and

g. responding to consumer inquiries, concerns, and/or complaints regarding the Certificates and/or association memberships.

65. Defendants' corporate headquarters have communicated by interstate mail and wire (including email and facsimile) with each other and with various regional offices, subsidiaries, and affiliates in furtherance of their scheme.

66. As a result, and by reason of the foregoing, Plaintiff and putative Class members have been injured, suffered harm, and sustained damage to their property, and are therefore entitled to recover actual and treble damages, and their costs of suit, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c).

67. In addition, as set forth above, Defendants have violated 18 U.S.C. §§ 1962(c) and will continue to do so in the future.  Enjoining Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate pursuant to 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962.

## <u>SECOND CAUSE OF ACTION</u>
**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))**

68. Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein, including specifically those paragraphs set out above in the First Cause of Action.

69. 18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section."  In violation of 18 U.S.C. §

1962(d), each Defendant conspired or agreed to join a scheme to defraud Plaintiff and members of the proposed Classes.

70.     In violation of 18 U.S.C. § 1962(d), Defendants of the RICO Enterprise, described and discussed above in ¶¶ 45–67, *supra*, conspired to join a scheme to defraud Plaintiff and members of the proposed Classes by marketing, selling, and/or administering an association group life insurance plan that was deceptively tied to association memberships that provided no real value to the Plaintiff or Class members in exchange for the dues collected from them. Plaintiff and putative members of the Wrongful Termination Subclass also suffered a cancellation of their Certificates, leaving them uninsurable without the right to convert to a comparable policy. Defendants of the RICO Enterprise reaped substantial monetary gains from their conspiracy. Defendants agreed to conduct or to participate in the affairs of the RICO Enterprise and agreed to commit at least two of the predicate acts identified above in the First Cause of Action.

71.     The injuries of Plaintiff and the putative Classes were directly and proximately caused by Defendants' racketeering activity that defrauded Plaintiff and the putative Classes. Defendants' racketeering activity at the expense of Plaintiff and Association Dues Class members allowed Defendants to profit from the sham memberships in the Health Depot Association and other associations. Likewise, Defendants' racketeering activity allowed them to profit from the premature cancellation of Plaintiff and putative Wrongful Termination Subclass members' Certificates.

72.     As a result, and by reason of the foregoing, Plaintiff and putative Class members have been injured, suffered harm and sustained damage to their property, and are therefore entitled to recover actual and treble damages, and their costs of suit, including reasonable attorney fees, pursuant to 18 U.S.C. § 1964(c).

73.     In addition, as set forth above, Defendants have violated 18 U.S.C. §§ 1962(c) and (d), and will continue to do so in the future.  Enjoining Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate pursuant to 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962.

### THIRD CAUSE OF ACTION
**(Breach of Contract – Against Defendant Cinergy)**

74.     Plaintiff adopts, re-alleges and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

75.     Plaintiff and the putative Class members purchased association memberships and group term life insurance coverage from Defendant Cinergy that were underwritten by Defendant Health Depot Association.

76.     Cinergy acted as an agent of Plaintiff and putative Class members for the purpose of procuring and maintaining the association memberships and group insurance coverage. Cinergy's uniform agreement to act as the agent for Plaintiff and putative Class members for purposes of procuring and maintaining the insurance coverage and association memberships created an express or implied contract.

77.     Plaintiff and the putative Class members substantially performed their obligations under the terms of the Handbook, Certificate, and implied contract with Cinergy, including by timely paying membership dues and premiums to maintain their life insurance coverage.

78.     Defendant Cinergy breached obligations owed to the Plaintiff and members of the Classes in several ways. Defendant Cinergy breached its agreement to provide association memberships and group term life insurance at affordable rates by collecting payments designated as membership dues and premium payments and using some portion of those payments to cover costs unrelated to the actual memberships or insurance evidenced by the Certificates—specifically,

the costs of the unearned, undisclosed and concealed kickbacks and/or grossly inflated commissions to Cinergy or others (which Cinergy's President, Touizer, used to fund his own personal and illegal endeavors). Defendant Cinergy breached the terms of the implied contract by failing to maintain insurance that met the needs of Plaintiff and putative Class members.

79.     With respect to the Wrongful Termination Subclass, Defendant Cinergy breached its guarantee provided to notify Plaintiff and putative Wrongful Termination Subclass members of the events that led to termination of their coverage. Likewise, Defendant Cinergy breached its guarantee to provide Plaintiff and putative Wrongful Termination Subclass members with the means necessary to obtain comparable replacement coverage upon termination of the Certificates. Defendant Cinergy also breached its implied contract to maintain the insurance coverage and association memberships for Plaintiff and putative members of the Wrongful Termination Subclass.

80.     Defendant Cinergy's breaches damaged Plaintiff and putative Association Dues Class members because Plaintiff and putative Association Dues Class members were caused to pay inflated amounts to fund Cinergy's unearned, undisclosed and concealed kickbacks and excessive commissions, and to maintain association memberships without receiving commensurate benefits from Cinergy or from the association memberships.

81.     Defendant Cinergy's breaches damaged Plaintiff and putative Wrongful Termination Subclass members because Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage, which they did not receive any benefits from as it was prematurely terminated.

82.     Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

<u>FOURTH CAUSE OF ACTION</u>
**(Breach of Contract – Against Defendant Group Plan Administrators)**

83.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

84.    Plaintiff and the putative Class members purchased association memberships and group term life insurance coverage from Defendant Group Plan Administrators that were underwritten by Defendant Health Depot Association.

85.    Group Plan Administrators acted as an agent of Plaintiff and putative Class members for the purpose of procuring and maintaining the association memberships and group insurance coverage.  Group Plan Administrators' uniform agreement to act as the agent for Plaintiff and putative Class members for purposes of procuring and maintaining the insurance coverage and association memberships created an express or implied contract.

86.    Plaintiff and the putative Class members substantially performed their obligations under the terms of the Handbook, Certificate, and implied contract with Group Plan Administrators, including by timely paying membership dues and premiums to maintain their life insurance coverage.

87.    Defendant Group Plan Administrators breached the express and implied contract in several ways. Defendant Group Plan Administrators breached the terms of the Handbook and/or Certificate by collecting payments designated as membership dues and premium payments and using some portion of those payments to cover costs unrelated to the actual memberships or insurance evidenced by the Certificates—specifically, unearned, undisclosed and concealed kickbacks and/or grossly inflated commissions to Group Plan Administrators or others.  Defendant Group Plan Administrators breached the terms of the implied contract by failing to maintain insurance that met the needs of Plaintiff and putative Class members.

88.     With respect to the Wrongful Termination Subclass, Defendant Group Plan Administrators breached the guarantee provided by the Handbook by failing to notify Plaintiff and putative Wrongful Termination Subclass members of the events that led to termination of their coverage. Likewise, Defendant Group Plan Administrators breached the guarantee to provide Plaintiff and putative Wrongful Termination Subclass members with the means necessary to obtain comparable replacement coverage upon termination of the Certificates.  Defendant Group Plan Administrators also breached its implied contract to maintain the insurance coverage and association memberships for Plaintiff and putative members of the Wrongful Termination Subclass.

89.     Defendant Group Plan Administrators' breaches damaged Plaintiff and putative Association Dues Class members because Plaintiff and putative Association Dues Class members were caused to pay inflated amounts to fund Group Plan Administrators' unearned, undisclosed and concealed kickbacks and excessive commissions, and to maintain association memberships without receiving commensurate benefits from Group Plan Administrators or from the association memberships.

90.     Defendant Group Plan Administrators' breaches damaged Plaintiff and putative Wrongful Termination Subclass members because Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage, which they did not receive any benefits from as it was prematurely terminated.

91.     Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

## **FIFTH CAUSE OF ACTION**
**(Breach of Contract – Against Defendant Health Depot Association)**

92.     Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

93.     An express or implied contract existed between Health Depot Association and the Plaintiff and putative Class members by virtue of the Plaintiff's and putative Class members' membership in the Health Depot Association.

94.     Plaintiff and the putative Class members substantially performed their obligations under the terms of the Health Depot Association membership, including by paying membership payments or dues to maintain their association membership.

95.     Defendant Health Depot Association breached its membership agreement with members of the Association Dues Class when it failed to act in the interests of its membership; failed to operate consistent with its stated purpose as set out in its Articles of Incorporation; and accepted membership dues and failed to apply those funds for the benefit of its members.

96.     Defendant Health Depot Association also breached its membership agreement with members of the Wrongful Termination Subclass when it failed to maintain group term life insurance coverage and failed to secure comparable replacement coverage for its members.

97.     Defendant Health Depot Association's breaches damaged Plaintiff and putative Association Dues Class members because Plaintiff and putative Association Dues Class members made payments for membership in the Health Depot Association but did not receive commensurate benefits of membership in the association.

98.     Defendant Health Depot Association's breaches damaged Plaintiff and putative Wrongful Termination Subclass members. Plaintiff and putative Wrongful Termination Subclass members paid premiums on insurance coverage. Yet, Health Depot Association failed to maintain

group term life insurance coverage and failed to secure comparable replacement coverage for its members upon cancellation of a master policy for association group term life insurance, leaving its members uninsurable or insurable only on less favorable terms than had Health Depot Association not breached its obligation.

99.     Plaintiff, on behalf of herself and putative Class members, seeks to recover compensatory damages as set out herein.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

100.    Plaintiff adopts, re-alleges, and incorporates herein each and every allegation in the foregoing paragraphs as though fully set forth herein.

101.    To the extent necessary, Plaintiff brings this count for unjust enrichment in the alternative to Plaintiff's breach of contract counts.

102.    The Plaintiff and members of the putative Classes conferred benefits on Defendants Cinergy, Group Plan Administrators and Health Depot Association by providing payments to them from which unearned, undisclosed and concealed kickbacks were made to Cinergy, Group Plan Administrators and Health Depot Association.

103.    Defendants appreciated or knew of the benefits conferred on them by Plaintiff and members of the putative Classes.

104.    Defendants retained the benefits under such circumstances as make the retention inequitable.  Specifically, Defendants used Health Depot Association and other associations as vehicles for Cinergy and Group Plan Administrators to sell association group insurance and avoid regulatory scrutiny.  Through this scheme, all three Defendants profited monetarily, including, but not limited to, Cinergy and Group Plan Administrators receiving inflated commissions and other unearned, undisclosed and concealed kickbacks from the sale of the association memberships and

group term life insurance certificates (which its President is alleged to have used to fund other criminal acts); and Health Depot Association receiving membership payments and providing nothing of value in return.

105.   Additionally, Defendants Cinergy, Group Plan Administrators and Health Depot Association cancelled Plaintiff and putative Wrongful Termination Subclass members' life insurance coverage and association memberships without any justification, without providing comparable replacement insurance.

106.   It is inequitable for Defendants to retain the benefits of the payments, commissions, membership payments, kickbacks and/or other monies received from Plaintiff and members of the Association Dues Class and Wrongful Termination Subclass.

107.   Plaintiff and members of the putative Classes demand an award against Defendants granting all equitable relief to which they are entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

    a.   Certifying the Association Dues Class and Wrongful Termination Subclass as requested herein;

    b.   Awarding Plaintiff and Class members compensatory damages, trebled, in an amount to be determined at trial;

    c.   Ordering all appropriate equitable remedies, including but not limited to declaratory and injunctive relief;

    d.   Awarding Plaintiff and Class members attorneys' fees and costs; and

    e.   Affording Plaintiff and Class members with such further and other relief as deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: October 14, 2021

/s/   J. Matthew Stephens
J. Matthew Stephens (Florida Bar No. 0688649)
P. Michael Yancey (to file for admission *pro hac vice*)
James M. Terrell (to file for admission *pro hac vice*)
Courtney C. Gipson (to file for admission *pro hac vice*)
**METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
mstephens@mtattorneys.com
myancey@mtattorneys.com
jterrell@mtattorneys.com
cgipson@mtattorneys.com

*Attorneys for Plaintiff*

**DEFENDANTS TO BE SERVED VIA PRIVATE PROCESS SERVER:**

**Group Plan Administrators, Inc.**
c/o CT Corporation System
1200 South Pine Island Road
Plantation, Florida, 33324

**The Health Depot Association, Inc.**
c/o Corporation Service Company
1201 Hays Street
Tallahassee, Florida, 32301

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2021, I filed the foregoing using the Court's CM/ECF

service and mailed a copy to Cinergy at the address listed below.


/s/    J. Matthew Stephens
*Attorney for Plaintiff*


## <u>Service List</u>


**CINERGY HEALTH, INC.**
c/o Steven B. Trattner
265 187th Street
Sunny Isles Beach, Florida 33160